KATHRYN CARSON, Plaintiff v. NATHAN BRYAN CARSON, Defendant

No. COA08-1462

(Filed 18 August 2009)

## 1. Child Support, Custody, and Visitation— retroactive child support—unincorporated separation agreement

A *de novo* review revealed the trial court erred by applying the 2006 North Carolina Child Support Guidelines with regard to the retroactive child support awarded from September 2003 to 31 August 2006 because: (1) the Guidelines do not supercede case law which prohibits retroactive child support from being awarded, absent an emergency situation, where the parties have complied with the payment obligations specified in a valid unincorporated separation agreement; and (2) the terms of the agreement will control until the parent receiving support seeks a child support order from the court. However, having found that the terms of the agreement were not reasonable to meet the child's needs, the court was justified in awarding prospective child support.

## 2. Child Support, Custody, and Visitation— unreimbursed medical expenses—unincorporated separation agreement

The trial court erred in a child support case by awarding plaintiff unreimbursed medical expenses in the amount of $2,549.25 because: (1) the trial court here was not justified in altering the terms of the Agreement with regard to the child's medical expenses and then applying the new terms retroactively since the trial court cannot alter the terms of a valid, unincorporated separation agreement retroactively absent an emergency situation; and (2) defendant was already responsible for one-hundred percent of the child's reasonable and necessary medical expenses he was aware of, and there was no evidence that defendant had breached the terms of the agreement at any time.

## 3. Child Support, Custody, and Visitation; Costs— attorney fees—retroactive child support—prospective child support

The trial court abused its discretion in a child support case by awarding plaintiff attorney fees for retroactive child support, but properly awarded attorney fees with regard to plaintiff's claim for prospective child support. The case is remanded with instructions for the trial court to reevaluate the attorney fees award and

make findings as to a reasonable award and order defendant to pay accordingly.

Appeal by defendant from a child support order entered 5 May 2008 by Judge Debra S. Sasser in Wake County District Court. Heard in the Court of Appeals 20 May 2009.

*Tharrington Smith, L.L.P., by Jill Schnabel Jackson and Steven D. Mansbery, for the plaintiff-appellee.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by Jonathan McGirt, and Herring, Mills & Krat, PLLC, by E. Parker Herring, for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant appeals from a Child Support Order entered 5 May 2008, which ordered him to pay retroactive child support, a portion of medical expenses incurred for his minor child, and plaintiff's attorney fees. After careful review, we reverse and remand.

Background

Nathan Bryan Carson ("defendant") and Kathryn Carson ("plaintiff") were married on 3 June 1972, separated on 12 March 1998, and later divorced. The parties have three children; however, only Kristen Carson ("Kristen"), born 21 July 1989, was the subject of the Child Support Order (the "Order") at issue.

On 12 March 1998, the parties executed a "Contract of Separation, Interim Property Settlement and Child Custody Agreement— (the "Agreement"). At the time, the parties had two minor children and one adult child. Pursuant to the Agreement, Ashlie Carson, a minor, lived primarily with defendant and Kristen, a minor, lived with each parent alternating on a bi-weekly schedule. The Agreement provided in pertinent part:

Section 4.2 Child Support. Husband shall maintain a major medical and hospitalization insurance policy on the children during their minority. Husband shall pay directly to the health care provider, upon receipt of statements therefor, the reasonable and necessary medical, hospital, surgical, drug and dental expenses incurred for the children in connection with their health care. Before Wife obligates Husband to pay any above-average medical or dental expenses, such as large or discretionary bills . . . the

Wife shall advise the Husband of the necessity of such expenditures and shall furnish him with the name and address of the physician or dentist who has recommended such treatment or other medical or dental care. . . .

In addition, beginning April 1, 1998, the Husband shall pay to the Wife the sum of $500 per month for child support. The Husband shall also continue to pay the expenses for the youngest minor child at Sylvan Learning Center until a Consent Order or other agreement is reached. The parties agree to attempt to negotiate the provisions of a child support and custody consent order for entry prior to March 1, 1999. In the event the parties cannot agree on the terms so that a consent order is entered prior to March 1, 1999, either party may file a custody complaint to give the court jurisdiction to enter an order.

. . . .

Section 5.12. <u>Counsel Fees Upon Breach</u>. In the event it becomes necessary to institute legal action to enforce compliance with the terms of this Agreement or by reason of the breach by either party of this Agreement, then the parties agree that at the conclusion of such legal proceeding, the losing party shall be solely responsible for all legal fees and costs incurred by the other party, such fees and costs to be taxed by the court. . . . It is the intent of this paragraph to induce both Husband and Wife to comply fully with the terms of this Agreement to the end that no litigation as between these parties is necessary in the areas dealt with by this Agreement . . . .

The parties never attempted to negotiate the provisions of a child support consent order. Plaintiff could have filed an action seeking additional support at any time, but for over eight years the parties complied with the Agreement. The evidence presented at the hearing tended to show that defendant never violated the terms of the Agreement with regard to the $500 monthly payment.

In 2004, Kristen, age fourteen, began living exclusively with plaintiff. Plaintiff did not seek court ordered child support or a modification of the Agreement. On 31 August 2006, plaintiff filed a Complaint in Wake County District Court alleging that the "amounts paid to plaintiff by defendant [were] not just and reasonable in that the amounts [did] not reflect a fair contribution to plaintiff to meet Kristen's needs and create[d] an unfair financial burden for plaintiff

in meeting Kristen's needs." Plaintiff claimed that she was "entitled to reimbursement from defendant for a portion of the actual expenses incurred for the benefit of the minor child from August 2003 through the present, less any amounts heretofore paid by defendant for child support." Plaintiff further claimed that defendant had "not paid Kristen's unreimbursed medical expenses as required by the Agreement." At the time this action began, Kristen was seventeen years old and the parties' only minor child.

On 6 November 2006, defendant filed a "Motion to Dismiss and Answer" claiming that the trial court lacked subject matter jurisdiction to modify the terms of the Agreement retroactively. Defendant alleged that plaintiff had waived any claim that the Agreement was unfair by accepting the $500 monthly payment since 1998. Defendant also contended that he had "no knowledge of any medical expenses submitted to him by Plaintiff which were not paid." Defendant began voluntarily paying $1,033.21 per month in child support beginning in November 2006 and continued paying this increased amount until January 2008.

A hearing in this matter was held on 6 March 2008 in Wake County District Court. On 5 May 2008, the trial court issued a Child Support Order and concluded as a matter of law:

2. The amount of support mutually agreed upon by the parties in their unincorporated separation agreement is not just and reasonable. The presumption that the amount of child support mutually agreed upon is just and reasonable is rebutted by the greater weight of the evidence.

3. The child's actual reasonable needs during the period from three years prior to the filing of the Complaint, as of the filing of the Complaint in this action, and continuing through January 2008, exceed the child support amount agreed to by the parties in their Agreement. The Court concludes by the greater weight of the evidence that plaintiff has rebutted the presumption that the child support amount in the Agreement is reasonable.

The Order required defendant to pay: 1) $31,036.85 in retroactive and prospective child support for Kristen from September 2003 through January 2008; 2) $2,549.25 in past medical expenses; and 3) $12,887.76 in attorney fees. The trial court granted defendant's motion to terminate child support effective 1 February 2008 since

Kristen was eighteen years old and a high school graduate as of that date.

Defendant appeals the order of the trial court and argues: 1) the trial court erred in granting retroactive child support contrary to established case law; 2) the trial court erred in awarding plaintiff payment for past medical expenses where defendant was not notified of the expenses per the Agreement; and 3) the trial court erred in granting plaintiff attorney fees because defendant was not in breach of the Agreement.

## Analysis

### I. Retroactive Child Support

[1] Defendant first argues that the trial court erroneously applied the 2006 North Carolina Child Support Guidelines ("the Guidelines") with regard to the retroactive child support awarded from September 2003 to 31 August 2006.[1] Defendant claims that because he paid in accord with the parties' Agreement, the law of this state prohibits retroactive child support absent an emergency situation. Because defendant's argument concerns a matter of law, we will review the issue *de novo*. *See Eakes v. Eakes*, 194 N.C. App. 303, 311, 669 S.E.2d 891, 897 (2008).

As a preliminary matter, we must clarify the difference between prospective and retroactive child support. "Child support awarded *prior* to the time a party files a complaint is properly classified as retroactive child support. . . . Child support awarded, however, from the time a party files a complaint for child support to the date of trial is . . . [termed] prospective child support . . . ." *Taylor v. Taylor,* 118 N.C. App. 356, 361, 455 S.E.2d 442, 446 (1995), *rev'd on other grounds*, 343 N.C. 50, 468 S.E.2d 33 (1996) (internal citations omitted). Defendant's argument concerns only the award of retroactive child support awarded prior to the time plaintiff filed the complaint in this matter.[2]

The Guidelines at issue in this case, promulgated by the Conference of Chief District Judges ("the Conference") under the

1. The trial court utilized the 2006 Guidelines because plaintiff's claim was heard and decided after 1 October 2006 when the updated Guidelines became effective. North Carolina Child Support Guidelines, 2009 Ann. R. N.C. 41 (Rev. Oct. 2006). We do not address whether the 2002 Guidelines were applicable in the absence of any argument by either party to that effect.

2. We will discuss a second type of retroactive child support *infra*, which is "a retroactive increase in the amount provided in an existing support order." *Cole v. Cole*, 149 N.C. App. 427, 433, 562 S.E.2d 11, 14 (2002).

authority granted them in N.C. Gen. Stat. § 50-13.4(c1) (2007), state in pertinent part:

> North Carolina's child support guidelines apply as a rebuttable presumption in all legal proceedings involving the child support obligation of a parent. . . . If a child's parents have executed a valid, unincorporated separation agreement that determines a parent's child support obligations and an action for child support is subsequently brought against the parent, the court must base the parent's child support obligation on the amount of support provided under the separation agreement rather than the amount of support payable under the child support guidelines unless the court determines, by the greater weight of the evidence taking into account the child's needs and the factors enumerated in the first sentence of G.S. 50-13.4(c), that the amount of support under the separation agreement is unreasonable. *In cases involving a parent's obligation to support his or her child for a period before a child support action was filed (i.e., cases involving claims for "retroactive child support" or "prior maintenance"), a court may determine the amount of the parent's obligation (a) pursuant to the child support guidelines, or (b) based on the parent's fair share of actual expenditures for the child's care.*

Guidelines, 2009 Ann. R. N.C. 41 (emphasis added).

Clearly, the Guidelines permit the trial court to award retroactive child support even where there is a valid, unincorporated separation agreement that states the obligations of the parties. *Id.* Pursuant to the Guidelines, the terms of the agreement must control unless the court finds "that the amount of support under the separation agreement is unreasonable." *Id.* Once the court decides that retroactive child support is warranted, the judge may determine the amount of the parent's obligation utilizing the Guidelines or the parent's fair share of the child's actual expenditures. *Id.*[3] Defendant argues that the Guidelines do not supercede case law, which prohibits retroactive child support from being awarded, absent an emergency situation,

---

3. This method of calculating retroactive child support differs from that set out in the 2002 Guidelines, which state "[t]he guidelines do not apply to orders for 'prior maintenance' (reimbursement of child-related expenses incurred prior to the date an action for child support is filed) . . . ." North Carolina Child Support Guidelines, Ann. R. N.C. (Rev. Oct. 2002). Here, the trial court applied the 2006 Guidelines to award retroactive child support for 2003 and 2004; however, the court based the 2005 retroactive child support on actual expenditures due to the parties' income level. The trial court's use of the 2006 Guidelines is not at issue in this case.

CARSON v. CARSON

[199 N.C. App. 101 (2009)]

where the parties have complied with the payment obligations specified in a valid, unincorporated separation agreement. We agree.

Nowhere in the statute does the legislature authorize the Conference to override existing case law in formulating the Guidelines. Although the Guidelines are formulated by the Conference of Chief District Judges pursuant to authority granted them by the legislature in N.C. Gen. Stat. § 50-13.4(c1), the Conference is not a legislative body, and the Guidelines are not codified in the North Carolina General Statutes. "While the guidelines generally must be employed in actions for child support, G.S. § 50-13.4, *et seq.*, the statute's silence with respect to prior, unincorporated. agreements suggests that the legislature had no intention of abrogating the holdings of *Fuchs-Williams*[,]" discussed *infra.*[4] *Pataky v. Pataky*, 160 N.C. App. 289, 301, 585 S.E.2d 404, 412 (2003) (citing *Yates v. New South Pizza, Ltd.*, 330 N.C. 790, 808, 412 S.E.2d 666, 677 (1992) ("Absent clear legislative intent to the contrary, we should presume that the legislature was aware of and intended to retain the longstanding common law rule enunciated in [earlier cases]"); *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977) ("In interpreting statutes, . . . it is always presumed that the Legislature acted with full knowledge of prior and existing law.")). Therefore, we find that if the trial court follows the Guidelines in awarding retroactive child support in cases involving unincorporated separation agreements, instead of controlling case law, the court is in error.

Here, the trial court followed the Guidelines in awarding retroactive child support to plaintiff; however, the law of this state, as set forth in *Fuchs v. Fuchs*, 260 N.C. 635, 133 S.E.2d 487 (1963), is controlling and is inconsistent with the Guidelines. In *Fuchs*, the parties entered into a separation agreement in which the plaintiff-husband agreed to pay the defendant-wife $100 per month for the support of each of the two minor child in the defendant's custody. *Id.* at 636, 133 S.E.2d at 489. The plaintiff continued to make the child support payments as required by the agreement until the defendant filed an action in the Superior Court of Forsyth County requesting that the plaintiff be required to pay $400 per month for each of the two minor children. *Id.* at 637, 133 S.E.2d at 489. "The [trial] court found no facts relating to the needs of the minor children," but determined that the plaintiff should pay defendant "$190.60 per month for the support of each minor child . . . ." *Id.* at 637, 133 S.E.2d at 490. The court

---

4. The case of *Williams v. Williams*, 261 N.C. 48, 134 S.E.2d 227 (1964) does not apply to the issues presented in the present case.

"ordered the plaintiff to pay the defendant an additional sum of $1,157.20" representing retroactive "arrears." *Id.* On appeal, our Supreme Court stated, with regard to *prospective* child support:

> [W]e hold that where parties to a separation agreement agree upon the amount for the support and maintenance of their minor children, there is a presumption in the absence of evidence to the contrary, that the amount mutually agreed upon is just and reasonable. We further hold that the court upon motion for an increase in such allowance, is not warranted in ordering an increase in the absence of any evidence of a change in conditions or of the need for such increase, particularly when the increase is awarded solely on the ground that the father's income has increased, therefore, he is able to pay a larger amount.

*Id.* at 639, 133 S.E.2d at 491. Therefore a rebuttable presumption was instituted in favor of the parties' separation agreement in the context of prospective child support. *Id.* The Court remanded the case because the trial court did not "take into consideration the earnings of the plaintiff and his living expenses as well as the needs of these minor children." *Id.* at 640-41, 133 S.E.2d at 492. The Court went on to state, "[f]urthermore, the order making the increased allowance retroactive . . . without evidence of some emergency situation that required the expenditure of sums in excess of the amounts paid by the plaintiff for the support of his minor children, is neither warranted in law nor equity." *Id.* at 641, 133 S.E.2d at 492. We interpret *Fuchs* to mean that where there is a valid, unincorporated separation agreement, which dictates the obligations of the parent providing support, and the parent complies fully with this obligation, the trial court is not permitted to award *retroactive* child support absent an emergency situation.[5] Thus, the terms of the agreement will control until the parent receiving support seeks a child support order from the court.

This Court has applied *Fuchs* in subsequent cases. In *Biggs v. Greer*, 136 N.C. App. 294, 524 S.E.2d 577 (2000), this Court expanded the *Fuchs* "emergency situation" requirement to retroactive increases

5. In addition to an emergency concerning the child, such an emergency situation could be evidenced by an accident or illness of the custodial parent, which prohibited him or her from seeking a court ordered increase in child support until he or she recovered. In such a situation, the trial court would be justified under *Fuchs* in awarding retroactive child support in excess of that provided for in the separation agreement during that period of time between the emergency and the commencement of court action.

in child support where a court order exists.[6] There, plaintiff-mother sought a retroactive increase in court ordered child support due to additional private school expenses for the parties' child. This Court, relying partially on *Fuchs*, held that an emergency situation must be shown justifying "a retrospective increase of an existing child support order." *Id.* at 303, 524 S.E.2d at 585. In *McKyer v. McKyer*, 179 N.C. App. 132, 632 S.E.2d 828 (2006), *disc. review denied*, 361 N.C. 356, 646 S.E.2d 115 (2007), this Court "uph[e]ld the district court's refusal to award retroactive child support," where there was no showing of an emergency situation, pursuant to *Fuchs* and *Biggs*. *Id.* at 142, 632 S.E.2d at 834 (footnote omitted). Furthermore, this Court in *Cole*, which dealt with prospective child support, noted that—*retroactive* child support . . . is subject to the constraints of *Fuchs* . . . ." *Cole*, 149 N.C. App. at 433, 562 S.E.2d at 14 (citations omitted).

In *Sikes v. Sikes*, 330 N.C. 595, 411 S.E.2d 588 (1992), our Supreme Court again addressed retroactive child support, specifically dealing with the time period between the entry of an interim court order and a final court order.[7] In *Sikes*, the Court held that "a district court may enter an interim order for child support in which it contemplates entering a permanent order at a later time and at such later time enter an order retroactive to the earlier order which requires larger child support payments than originally required." *Id.* at 598, 411 S.E.2d at 590. *Sikes* held *Fuchs* to be inapplicable under those specific circumstances and thus no emergency situation was required to justify retroactive support. *Id.* at 599, 411 S.E.2d at 590. The most important distinction between the present case and *Sikes* is that *Sikes* dealt with a different type of retroactive child support. In *Sikes*, the time period at issue was between court orders, whereas here, the time period is three years prior to the filing of plaintiff's complaint. *Fuchs* deals specifically with the same time period at issue here, in which there is a valid, unincorporated separation agreement. Therefore *Fuchs* is controlling in this instance.

Plaintiff argues that the Agreement in this case was not meant to be final since the parties indicated a willingness to seek court ordered child support by 1 March 1999, and therefore the Agreement

6. Though not explicit, it appears that the court order was final as opposed to an interim court order as seen in *Sikes*, discussed *infra*.

7. In the present case, the retroactive child support at issue is that paid prior to any court action where the parties had an unincorporated separation agreement that was not being breached.

is analogous to an interim court order, as seen in *Sikes*. Nevertheless, the Agreement was in effect until the parties actually sought court action, which did not occur until the filing of plaintiff's complaint, over eight years after the Agreement was signed. There was no clause in the Agreement setting a deadline for court action or placing an expiration date on the Agreement. The parties were free to abide by the Agreement indefinitely, without ever seeking court intervention. Where there is an *interim* court order, the court clearly intends to take further action. A child support clause in an unincorporated separation agreement is binding on the parties and does not necessitate court action. Therefore, plaintiff's contention that the Agreement was intended to be temporary, implicating *Sikes* rather than *Fuchs*, is without merit.

In 2003 this Court addressed, for the first time since enactment of the Guidelines, "the impact . . . of an unincorporated separation agreement that includes allowance for child support on a subsequent claim for child support." *Pataky*, 160 N.C. App. at 293, 585 S.E.2d at 408. While *Pataky* dealt only with prospective child support, the holdings of *Pataky* are relevant to the issues before us in this case.

The Court in *Pataky* analyzed prior case law, with an emphasis on the holding of *Fuchs*, current statutory provisions, and the Guidelines in effect at that time. The Court noted that, "[i]f separation agreements are accorded no deference, parties who enter into them will have no protection from a party who agrees to a support amount but later seeks redress from the courts simply because he or she is unhappy with the decision to enter into the contract." *Id.* at 304, 585 S.E.2d at 414 (footnote omitted).

Ultimately, the Court held "that the *Fuchs-Williams* principles are still applicable and require our courts to examine cases such as the one *sub judice* [where a valid, unincorporated child support agreement exists] differently from those in which no separation agreement is present." *Id.* at 299, 585 S.E.2d at 411. In accord with *Fuchs*, the Court in *Pataky* further outlined a two-prong test for the trial court with regard to *prospective* child support as follows:

[I]n an initial determination of child support where the parties have executed an unincorporated separation agreement that includes provision for child support, the court should first apply a *rebuttable presumption* that the amount in the agreement is reasonable and, therefore, that application of the guidelines would be "inappropriate." The court should determine the actual

needs of the child at the time of the hearing, as compared to the provisions of the separation agreement. If the presumption of reasonableness is not rebutted, the court should enter an order in the separation agreement amount and make a finding that application of the guidelines would be inappropriate. If, however, the court determines by the greater weight of the evidence that the presumption of reasonableness afforded the separation agreement allowance has been rebutted, taking into account the needs of the children existing at the time of the hearing and considering the factors enumerated in the first sentence of G.S. § 50-13.4(c), the court then looks to the presumptive guidelines established through operation of G.S. § 50-13.4(c1) and the court may nonetheless deviate if, upon motion of either party or by the court *sua sponte*, it determines application of the guidelines—would not meet or would exceed the needs of the child . . . or would be otherwise unjust or inappropriate."

*Id.* at 305, 585 S.E.2d at 414-15 (emphasis added) (footnote omitted). *Pataky* is clear on how the trial court is to determine the appropriate amount of prospective child support where there is a valid, unincorporated separation agreement containing a provision for child support. There is a rebuttable presumption that the terms of the agreement are reasonable to meet the child's needs. *Id.* Again, *Pataky* does not specifically address retroactive child support. *Fuchs* is still binding with regard to retroactive child support where there is a valid, unincorporated separation agreement dictating the parties' obligations.

In reviewing the 2006 Guidelines, it appears that the Conference took *Pataky* into account, but incorrectly applied the rebuttable presumption to retroactive child support instead of only prospective child support. Under *Fuchs*, retroactive child support is not permitted where there is a valid, unincorporated separation agreement, which has not been breached, and no emergency situation. Therefore, the trial court's reliance on the Guidelines was error where the Guidelines were not in accord with the mandate of our Supreme Court in *Fuchs* with regard to retroactive child support.

In the case *sub judice*, there is no dispute that defendant made monthly payments pursuant to the terms of the Agreement from the time it became effective until the time plaintiff filed a complaint in district court. Absent an emergency situation, the Agreement was binding, and the trial court had no authority to award retroactive child support in excess of the terms of the Agreement. *Fuchs*, 260

N.C. at 641, 133 S.E.2d at 492. However, having found that the terms of the Agreement were not reasonable to meet the child's needs, the court was justified in awarding prospective child support.[8] *Pataky*, 160 N.C. App. at 305, 585 S.E.2d at 414-15.

Accordingly, we reverse that portion of the trial court's Order that awards retroactive child support and remand for further proceedings not inconsistent with this opinion.

## II. Unreimbursed Medical Expenses

[2] Next, defendant contends that the trial court erred in awarding plaintiff unreimbursed medical expenses ("UMEs"). We agree.

Pursuant to the terms of the Agreement, defendant was required to pay one-hundred percent of UMEs that he was made aware of, so long as the expenses were "reasonable and necessary." Defendant argued before the trial court that he was not made aware of any UMEs. There is no evidence in the record to show the existence of medical expenses that defendant was unaware of, and the trial court made no findings regarding any breach of the Agreement by defendant. Nevertheless, the trial court determined that the parties should pay for the child's medical expenses pro rata and ordered defendant to pay $2,549.25 in UMEs.

Because we have held that the trial court cannot alter the terms of a valid, unincorporated separation agreement retroactively absent an emergency situation, the trial court here was not justified in altering the terms of the Agreement with regard to the child's medical expenses and then applying the new terms retroactively.[9] Defendant was already responsible for one-hundred percent of the child's reasonable and necessary medical expenses he was aware of, and since there was no evidence that defendant had breached the terms of the Agreement at any time, the trial court erred in ordering him to pay the $2,549.25 in UMEs. Thus, we reverse that portion of the trial court's order awarding UMEs and remand for further proceedings not inconsistent with this opinion.

## III. Attorney Fees

[3] Finally, defendant claims that the trial court erred in awarding attorney fees to plaintiff in the amount of $12,887.76.

---

8. Defendant does not argue that the presumption was not rebutted by the evidence, nor does he argue that prospective child support was improperly awarded.

9. Defendant does not argue that the trial court erred in altering the terms of the Agreement prospectively with regard to medical expenses.

CARSON v. CARSON

[199 N.C. App. 101 (2009)]

In an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. *Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding;* provided however, should the court find as a fact that the supporting party has initiated a frivolous action or proceeding the court may order payment of reasonable attorney's fees to an interested party as deemed appropriate under the circumstances.

N.C. Gen. Stat. § 50-13.6 (2007) (emphasis added). "Whether these statutory requirements have been met is a question of law, reviewable on appeal. When the statutory requirements have been met, the *amount* of attorney's fees to be awarded rests within the sound discretion of the trial judge and is reviewable on appeal only for abuse of discretion." *Hudson v. Hudson,* 299 N.C. 465, 472, 263 S.E.2d 719, 724 (1980) (citations omitted).

The trial court found as fact, *inter alia,* that: 1) plaintiff acted in good faith; 2) had insufficient funds to defray the expenses of litigation; 3) "[a]t the time the Complaint was filed in this action, Defendant was paying $500 per month in child support, an amount that is not adequate under the circumstances then existing[]"; and 4) plaintiff's attorney fees exceeded $15,000 and were related "to her claims for prospective and retroactive child support." The trial court made the necessary factual findings pursuant to N.C. Gen. Stat. § 50-13.6; however, we note that the trial court did not find that defendant "refused" to pay an adequate amount pursuant to the language in the statute.

Defendant claims that he did not *refuse* to provide adequate support as he was operating under the terms of the Agreement. We agree with defendant that attorney fees should not have been awarded with regard to plaintiff's claim for retroactive child support; however, attorney fees were proper with regard to plaintiff's claim for prospective child support.

CARSON v. CARSON

[199 N.C. App. 101 (2009)]

We recognize that the defendant made a similar argument in *Sikes*, that he had not refused to pay child support and was paying in accord with the interim court order. However, the Court upheld the award of attorney fees stating:

The defendant argues that there was not evidence to support a finding of fact that he had refused to provide adequate child support because the evidence showed he had paid the amount of child support that he had been ordered to pay [under the interim court order]. It is undisputed in this case that the defendant refused to pay the amount set by the court as adequate until he was ordered to do so by the court [under a final court order]. This supports this finding of fact.

*Sikes*, 330 N.C. at 600, 411 S.E.2d at 591. However, in *Sikes*, the award of retroactive child support, which related to the time frame between an interim court order and a final court order, was upheld.[10] In the case *sub judice*, we hold that retroactive child support is not permitted for the time frame prior to any court action, absent an emergency situation, where there is a valid, unincorporated separation agreement. Since the trial court in this case erred in awarding retroactive child support, we find that it erred in awarding attorney fees based, in part, on the plaintiff's expenses in seeking the retroactive child support.

Even so, the trial court in this case found that defendant was not paying an adequate amount and ordered an increase *prospectively* as well, and defendant does not argue that this finding was in error. Thus, we find that plaintiff was entitled to some measure of attorney fees because defendant was not paying an adequate amount under the terms of the Agreement and plaintiff therefore brought the action in good faith to seek a prospective increase. *See Taylor*, 118 N.C. App. at 365, 455 S.E.2d at 448 ("[T]he question is not whether plaintiff refused to pay any child support but whether he refused to pay *adequate* child support 'under the circumstances existing at the time of the institution of the action.' ") (quotation omitted).

Here, the trial court ordered defendant to pay $12,887.76 of plaintiff's legal fees, which exceeded $15,000. Because we cannot ascertain which portion of the attorney fees is based on the improperly granted retroactive child support award and which portion is

10. The amount of child support in an interim court order is not necessarily adequate. In a separation agreement, the parties are agreeing that the amount of support is adequate, and it is presumed to be so until court action is commenced.

based on the properly awarded prospective child support award, we remand with instructions for the trial court to reevaluate the attorney fees award and make findings as to a reasonable award and order defendant to pay accordingly. We further order the trial court to make the proper finding as to whether defendant "refused" to pay what was adequate.

## Conclusion

Based on the foregoing, we hold that the trial court erred in awarding retroactive child support and unreimbursed medical expenses as defendant complied at all times with the terms of the parties' valid, unincorporated separation agreement. We further hold that the trial court erred in awarding attorney fees based, in part, on plaintiff's legal fees related to her improper claim for retroactive child support. Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Judges STEELMAN and ERVIN concur.