NO. 13-760

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

ALANA WILLIAMS RESPESS,

    Plaintiff,

v.

                                      Beaufort County
                                      No. 07 CVD 606
                                            08 CVD 570

MURPHY TODD RESPESS,

    Defendant,

    and

BOYD AND SUSAN RESPESS,

    Intervenors.

Appeal by defendant from order entered 16 October 2012 by Judge Christopher B. McLendon in Beaufort County District Court. Heard in the Court of Appeals 11 December 2013.

    *Pritchett & Burch, PLLC, by Lloyd C. Smith, Jr., Lloyd C. Smith, III, and R. Gray Jernigan for plaintiff-appellee.*

    *Ward and Smith, P.A., by John M. Martin, for defendant-appellant.*

    STEELMAN, Judge.

The trial court did not err by denying visitation with the minor children to defendant. The trial court did not err by ordering that plaintiff was entitled to child support or by imputing income to defendant. The order of the trial court is

remanded for additional findings on the amount of income to be imputed to defendant and the amount of retroactive child support. The trial court did not err by transferring a vehicle to plaintiff as part of defendant's child support arrearage without calculating the value of the vehicle. The trial court's award of attorney's fees to plaintiff included the findings of fact required by N.C. Gen. Stat. § 50-13.6, and the trial court did not err in calculating a reasonable amount of attorney's fees. However, we remand this issue to the trial court for findings as to plaintiff's reasonable expenses as they pertain to her ability to pay for counsel.

## I. Factual and Procedural Background

Plaintiff Alana Respess and defendant Todd Respess were married on 22 August 1986, separated in 2006, and were divorced on 15 June 2009. They have four children: Jessica, born in 1987; Amanda, born 1993; Allysa, born 1998; and Noah, born in 2002. In 2005 defendant admitted to plaintiff that he had engaged in inappropriate sexual activity with Jessica, and on 3 May 2007 defendant pled guilty to five felony counts of indecent liberties with a child. In Case No. 05 CRS 54090, he was sentenced to 16 to 24 months imprisonment, suspended for 36 months of supervised probation on condition that he register as a sex offender, submit to electronic monitoring, have only

supervised visitation with his children, and serve a four month active sentence. This sentence was completed in December 2009. In Case No. 07 CRS 1209, defendant pled guilty to four additional counts of indecent liberties, and was sentenced to consecutive terms of 16 to 24 months imprisonment, with the first to begin at the expiration of the active sentence in 05 CRS 54090. The four sentences were suspended on the same terms as in 05 CRS 54090, with the sentences to expire on 28 August 2011, 27 April 2013, 27 December 2015, and 26 April 2017.

On 7 May 2007 plaintiff filed a complaint seeking temporary and permanent custody of the three minor children (Jessica reached majority in 2005). Plaintiff alleged that defendant had violated the conditions established by the Beaufort County DSS for visitation and that he was not "a fit and proper person" to have custody of the children. In his answer, defendant counterclaimed, seeking custody, child support,[1] and attorney's fees. In her reply, plaintiff requested that defendant be denied all contact with the minor children. On 21 May 2008 plaintiff filed a complaint for divorce, child support, equitable distribution, and attorney's fees. In his answer, defendant

---

[1] On 12 June 2007 the minor children's paternal grandparents (intervenors) moved to intervene and sought visitation with the minor children. Their motion was granted on 6 August 2007. The trial court granted the intervenors visitation. The intervenors are not a party to this appeal.

denied the material allegations of plaintiff's complaint and counterclaimed for child support, equitable distribution, and attorney's fees. Plaintiff filed a reply on 25 August 2008. The parties were granted a divorce on 15 June 2009.

On 16 October 2012 the trial court entered an order on the issues of child custody, child support, visitation, and the attorney's fees associated with litigation of these issues. At that time only Alyssa and Noah were minors. The provisions of the court's order concerning custody, visitation, and prospective child support apply only to those two children. The court made findings concerning defendant's sexual abuse of Jessica and his subsequent behavior towards her and his other children, and concluded that it would be "totally inappropriate" and detrimental to the best interests of the children for defendant to have "visitation or custodial relationships of any type" with the minor children. The trial court also made findings concerning the effect of defendant's sexual abuse upon his employment situation, and found that it was appropriate for the court to impute an income of approximately $50,000 a year to defendant, an amount that was about half of his previous annual earnings. The trial court concluded that plaintiff was entitled to retroactive and prospective child support, and to attorney's fees.

Defendant appeals.

## II. Denial of Visitation to Defendant

In his first argument, defendant contends that the trial court committed reversible error by denying him visitation with the minor children. We disagree.

### A. Standard of Review

"Under our standard of review in custody proceedings, 'the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary.' Whether those findings of fact support the trial court's conclusions of law is reviewable *de novo.*" *Mason v. Dwinnell*, 190 N.C. App. 209, 221, 660 S.E.2d 58, 66 (2008) (quoting *Owenby v. Young*, 357 N.C. 142, 147, 579 S.E.2d 264, 268 (2003) (other citation omitted). "A trial court's unchallenged findings of fact are 'presumed to be supported by competent evidence and [are] binding on appeal.' If the trial court's uncontested findings of fact support its conclusions of law, we must affirm the trial court's order." *Mussa v. Palmer-Mussa*, 366 N.C. 185, 191, 731 S.E.2d 404, 409 (2012) (quoting *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (other citation omitted).

### B. Analysis

Defendant argues, based on the holding of *Moore v. Moore*, 160 N.C. App. 569, 587 S.E.2d 74 (2003), that the trial court did not comply with the provisions of N.C. Gen. Stat. § 50-13.5(i), and contends the trial court's finding that it was not in the children's best interests to have visitation with him was not supported by its other findings.

Under N.C. Gen. Stat. § 50-13.1(a) "the word 'custody' shall be deemed to include custody or visitation or both." It is long-established that a trial court's determination of child custody, including visitation, must be guided by the best interests of the child:

> [W]e apprehend the true rule to be that the court's primary concern is the furtherance of the welfare and best interests of the child and its placement in the home environment that will be most conducive to the full development of its physical, mental, and moral faculties. All other factors, including visitorial rights of the other applicant, will be deferred or subordinated to these considerations[.]

*Griffith v. Griffith*, 240 N.C. 271, 275, 81 S.E.2d 918, 921 (1954). This standard is incorporated in N.C. Gen. Stat. § 50-13.2(a), which directs the trial court to "award the custody of [a] child to such person . . . as will best promote the interest and welfare of the child."

It is also well-established that "the applicable standard of proof in child custody cases is by a preponderance, or

greater weight, of the evidence." *Speagle v. Seitz*, 354 N.C. 525, 533, 557 S.E.2d 83, 88 (2001) (citing *Jones v. All American Life Ins. Co.*, 312 N.C. 725, 733, 325 S.E.2d 237, 241 (1985)).

Although courts seldom deny visitation rights to a non-custodial parent, a trial court may do so if it is in the best interests of the child:

> [T]he welfare of a child is always to be treated as the paramount consideration[.] . . . Courts are generally reluctant to deny all visitation rights to the divorced parent of a child of tender age, but it is generally agreed that visitation rights should not be permitted to jeopardize a child's welfare.

*Swicegood v. Swicegood*, 270 N.C. 278, 282, 154 S.E.2d 324, 327 (1967) (citing *Griffin v. Griffin*, 237 N.C. 404, 75 S.E. 133 (1953)). *See also*, *In re Custody of Stancil*, 10 N.C. App. 545, 551, 179 S.E.2d 844, 848-49 (1971) ("'The rule is well established in all jurisdictions that the right of access to one's child should not be denied unless the court is convinced such visitations are detrimental to the best interests of the child.'") (quoting *Willey v. Willey*, 253 Iowa 1294, 1302, 115 N.W. 2d 833, 838 (1962)). This principle is codified in N.C. Gen. Stat. § 50-13.5(i), which provides that:

> In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent

> being denied visitation rights is an unfit person to visit the child <u>or</u> that such visitation rights are not in the best interest of the child. (emphasis added).

The statutory language is straightforward and unambiguous and requires that if a trial court does not grant reasonable visitation to a parent, its order must include a finding <u>either</u> that the parent is "an unfit person to visit the child" <u>or</u> that visitation with the parent is "not in the best interest of the child." Although our Supreme Court has not issued an opinion discussing this statute, during the past 30 years this Court has issued numerous opinions applying N.C. Gen. Stat. § 50-13.5(i). For example, in *King v. Demo*, 40 N.C. App. 661, 666-667, 253 S.E.2d 616, 620 (1979), we stated that:

> Unless the child's welfare would be jeopardized, courts should be generally reluctant to deny all visitation rights to the divorced parent of a child of tender age. Moreover, G.S. 50-13.5(i) provides [that] . . . "prior to denying a parent the right of reasonable visitation, [the trial court] shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child."

(citing *Swicegood,* and *Stancil*). And, in *Johnson v. Johnson*, 45 N.C. App. 644, 647, 263 S.E.2d 822, 824 (1980), we held that:

> In awarding visitation privileges the court should be controlled by the same principle which governs the award of primary custody, that is, that the best interest and welfare

> of the child is the paramount consideration. . . . G.S. 50-13.5(i) provides that "[i]n any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child."

(citing *Swicegood*). During the 33 years since *Johnson* was decided, we have consistently followed both its application of the best interests standard to disputes between parents regarding child custody and visitation, and its acceptance of the plain language of N.C. Gen. Stat. § 50-13.5(i). *See, e.g.*, *Correll v. Allen*, 94 N.C. App. 464, 471, 380 S.E.2d 580, 584 (1989) ("Visitations may be denied if visitation is not in the child's best interest.") (citation omitted); *Raynor v. Odom*, 124 N.C. App. 724, 733, 478 S.E.2d 655, 660 (1996) ("G.S. 50-13.5(i) requires that 'the trial judge prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interests of the child.'"); and *Maxwell v. Maxwell*, 212 N.C. App. 614, 622, 713 S.E.2d 489, 495 (2011) ("Our General Assembly has provided that: '. . . prior to denying a parent the right of reasonable visitation, [the trial court] shall make a

written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.' N.C. Gen. Stat. § 50-13.5(i) (2009)"). Thus, "it is generally agreed that visitation rights should not be permitted to jeopardize a child's welfare." *Swicegood*, 270 N.C. at 282, 154 S.E. 2d at 327.

In the present case, the trial court found, as required by N.C. Gen. Stat. § 50-13.5(i), that it would not be in the children's best interests to have any visitation with defendant. This ultimate finding of fact was supported by numerous evidentiary findings of fact, including the following:

. . .

12. The Court had the opportunity to observe the demeanor of each of the witnesses called by the parties and to hear their testimony.

13. The Court formed opinions as to the veracity of each witness having had the occasion to observe said witnesses and to hear their testimony.

14. On August 4, 2005 . . . the Defendant . . . confessed to [plaintiff] that he had engaged in inappropriate sexual behavior with Jessica Respess. . . .

. . .

17. In 2007, the Plaintiff . . . move[ed] to Kansas[.].

. . .

30. After the revelations of August 4, 2005 to the Plaintiff by the Defendant, [law enforcement authorities] . . . began a criminal investigation of the Defendant[.]

31. On August 18, 2005, the Defendant made a voluntary statement to Investigators . . . regarding his voluntary sexual acts with his minor daughter, Jessica.

32. Said voluntary statement, which was . . . acknowledged to be true and accurate during his testimony by the Defendant is incorporated herein[.]

. . .

34. In March of 2002 . . . Defendant slept in the same bed with Jessica who . . . [was] 14 years of age. . . . Between February 2003 and August 2004, the Defendant touched Jessica on her bare breasts many times, kissed Jessica's breasts on occasion, and rubbed Jessica's vaginal area numerous times. The Defendant estimates that he put his finger inside of Jessica's vagina and kissed her breasts on at least ten occasions.

35. Between August 2004 and August 18, 2005, the Defendant touched Jessica's breast more than ten times, rubbed her vaginal area ten to twelve times, inserted his finger inside of Jessica's vaginal area ten or twelve times, and kissed her bare breasts three or more times.

36. The Defendant allowed or caused Jessica to have an orgasm while riding straddled on top of him a number of times.

37. The Defendant was charged with multiple sex offenses and indecent liberties with a minor child in October of 2005 in Beaufort County.

. . .

43. The Defendant was ordered by the Department of Social Services as conditions of being able to visit with his children not to be alone with the children out of the presence of the Plaintiff, not to kiss the children on the lips, not to allow them to sit on his lap . . . [and] not to otherwise engage any type of physical touching or activity that could be determined to be sexual grooming. During the year of 2006, the Defendant . . . engaged in these prohibited activities.

. . .

45. Amanda Respess, who is now 18 years of age but is still in high school, testified as did her younger sister, Allysa. Both of these individuals gave forthright testimony which is highly creditable.

. . .

47. Based upon the testimony of Amanda Respess and Allysa Respess, which the Court finds to be creditable, the Court determines that the Defendant engaged in the following behaviors:

A. Would rub their chest to awaken them in the morning, although, they were of an age to have developed breasts.

B. Would rub lotion on their backs and their naked buttocks under the pretense of making sure their skin was soft.

C. Would spend[] hours combing their hair just as he had previously done with Jessica.

D. After the Defendant was separated from the home in August of 2005, he suggested to Amanda that, since she was a minor and an

excellent shot, that an accidental shooting of the Plaintiff, her mother, would be appropriate. . . .

E. Saw both children at inappropriate times and places in violation of the restrictions placed on his visitation[.] . . .

F. Would take the minor child, Allysa, by himself to a barn behind [her] residence . . . and would threaten Allysa with physical punishment . . . if she revealed that he had taken her away from the family unit.

48. Amanda and Allysa Respess both testified that they wanted no contact with the Defendant, their father, of any type. . . .

. . .

52. After the Defendant was indicted on the multiple sexual charges . . . three men who belonged to the same church as [the Intervenors] and the Defendant, went to see the Defendant at his trailer[.] . . .

53. In this meeting . . . the Defendant stated that he "never molested anyone who hadn't reached puberty" and further stated that if "he wished to live with his daughter, it was no one else's business."

54. Between November 2005 and . . . July 2007, Judy Kilpatrick, a Department of Social Services case worker, had . . . conversations with the Defendant[, who] . . . told [her] many disturbing things which included but were not necessarily limited to the following:

A. He had a love affair with Jessica and he fell in love with her.

B. Jessica came to him and pursued him.

C. Jessica was a better wife than the Plaintiff and that he would like to have a wife like her.

D. The Plaintiff didn't satisfy his sexual needs and this was the reason he was involved with Jessica.

E. The Defendant stated "[Alana] was the problem" and the reason he engaged in sexual behavior with his minor child, Jessica.

F. The Defendant referred to his daughter, Jessica Respess, when she was a minor with the nickname "Luscious Lips" and admitted kissing her and his other children directly on the lips and nibbling with his teeth on Jessica's lower lip.

55. The Defendant also . . . told the Plaintiff . . . that the problems arising out of his destructive behavior with his daughter were the fault of the Plaintiff.

56. The Defendant, after he was charged with criminal indecent liberties . . . left notes with his daughter, Jessica, suggesting how she might testify so that his behavior did not look so bad.

. . .

58. The Defendant also, during the period of time when he was not supposed to write to or communicate with his minor children, sent messages to the minor children[.] . . .

59. The Plaintiff introduced numerous hand-written letters and notes from the Defendant to his minor children indicating that he still did not see anything wrong with what he had done, which . . . were written and delivered in violation of the restrictions imposed upon communication between the [defendant] and his children[, and] . . . contained [inappropriate] language[.] . . .

60. On May 3, 2007, the Defendant entered pleas of guilty to five counts of indecent liberties with the minor child, Jessica Respess.

61. . . . [In] File Number 05 CRS 54090, he [pled] guilty to a Class F, Level 1 Felony and was sentenced to . . . [16 to 24] months of an active sentence suspended for thirty six months of supervised probation upon the condition that he register as a sex offender, submit to electronic monitoring, have supervised visitation only with his children, and serve a four month active sentence in jail. This sentence expired December 29, 2009.

62. . . . [In] File Number 07 CRS 1209 in Count 1, he [pled] guilty to the charge of indecent liberties . . . [and received the same sentence as in File No. 54090,] to run at the expiration of the 05 CRS 54090 and which sentence was suspended on the same terms and conditions as the sentence handed down in O5 CRS 54090. . . . [T]his sentence would expire on August 28, 2011.

63. In this same criminal case, the Defendant [pled] guilty to a second count of indecent liberties . . . and [received] an identical sentence . . . [that] would run at the expiration of the active sentence in Count 1 and . . . expire on April 27, 2013.

64. In this same criminal case, the Defendant [pled] guilty to a third count of indecent liberties . . . and was sentenced to an identical sentence as in the first count . . . [to] run at the expiration of the active sentence in Count 2 and . . . expire on December 27, 2015.

65. In this same criminal case, the Defendant [pled] guilty to a fourth count of indecent liberties . . . and was sentenced

to an identical sentence as in the first count . . . [to] run at the expiration of the active sentence in Count 3 and . . . expire on April 26, 2017.

66. If the Defendant were to have unsupervised visitation or custody as he sought in his counterclaim, he would be in violation of the terms of the Superior Court Order suspending his active sentences.

67. As a condition of the sentence imposed in . . . file number 05 CRS 54090, the Defendant served an active prison sentence . . . from May 2007 through December 2007.

. . .

71. Amanda Respess, having a date of birth of May 25, 1993 . . . [has] health problems as she has developed Neurofibromatosis, which is a disease which affects the nerve endings in the brain[.] . . .

. . .

75. Allysa Respess . . . is a very mature 13 year old girl who testified creditably in Court. . . .

. . .

77. The minor child, Noah, is in the fourth (4th) grade. He is very energetic and enjoys . . . scholastic and community activities[.]

. . .

80. The three minor children, Amanda, Allysa, and Noah, are doing extraordinarily well in Smith Center, Kansas, and their environment should not be disturbed.

81. The Plaintiff took the children to family counseling . . . with Cyndee Fintel who spoke to the Court's expert, Dr. Harold

May, and recommended that there be no visitation between the minor children and the Defendant.

. . .

85. Dr. Harold May, Ph.D., of the Carolina Center . . . testified as the Court's appointed expert.

. . .

89. Dr. May has not seen the minor children in over three years and six months as of the date of this hearing.

. . .

91. The present therapist . . . for the Defendant is Michael Doughtie, who . . . testified that the Defendant . . . viewed Jessica more as a wife than as a daughter[, and that] . . . the sexual abuse of Jessica had begun at least in 1998.

92. Mr. Doughtie also testified creditably that as recently as June of 2010, the Defendant expressed concerns about "Jessica getting married" and that the Defendant was "losing her." These remarks were further evidence that the Defendant had made Jessica Respess, in his mind, both a mother and a wife figure.

93. These comments made to Mr. Doughtie combined with the Defendant's other actions such as grooming the minor children, Amanda and Allysa, are creditable and strong evidence indicating that the Defendant should never have any contact with his three younger children.

94. The Court rejects the suggestions of Dr. May that the children should have any contact with the Defendant as it is not in the children's best interest so to do.

. . .

> 125. The Defendant engaged in a prolonged, deliberate, and willful course of sexually abusing Jessica Respess.

. . .

> 146. As a further mixed finding of fact and conclusion of law, the Court concludes that the Defendant's . . . sexual molestation of his oldest daughter over a period of not less than five (5) years, his refusal to accept responsibility for it, his continued obsession with his minor daughter[,] . . . his grooming behaviors to his two youngest daughters, the threats he made to his youngest daughter[], and his refusal to accept ultimate responsibility make him a totally inappropriate person to have visitation or custodial relationships of any type with his minor children, and the Court finds as a mixed finding of fact and conclusion of law that it would be actually adverse to any good interest of the minor children for the Defendant to have any contact whatsoever, and the Court must be vigilant in preventing the same.

We hold that the trial court made the finding required by N.C. Gen. Stat. § 50-13.5(i) that it was not in the best interests of the minor children that defendant have visitation. This finding was supported by other, unchallenged, findings, and the trial court did not err by denying visitation to defendant.

In seeking to persuade us to reach a contrary conclusion, defendant relies primarily on the case of *Moore v. Moore*, 160 N.C. App. 569, 587 S.E.2d 74 (2003), which he contends is

"controlling" and requires us to reverse the trial court. After careful review, we conclude that *Moore* is not dispositive of this issue.

*Moore* arose from a custody dispute between the divorced parents of a minor child. The plaintiff-father's visitation rights were suspended after the child disclosed sexual contact between the plaintiff and the child. The trial court denied the plaintiff's motion to reinstate visitation and found that it would not be in the child's best interests for plaintiff's visitation to be reinstated. *Moore*, 160 N.C. App. at 571, 587 S.E.2d at 75. On appeal, this Court reversed the trial court, based on application of a new standard for a trial court's denial of visitation rights, and held for the first time that (1) a trial court's denial of visitation is tantamount to termination of parental rights, and therefore requires the trial court to apply the "clear, cogent, and convincing" evidence standard applicable to termination cases; (2) to comply with N.C. Gen. Stat. § 50-13.5(i), a trial court must apply the standard applicable to a custody dispute between a parent and a non-parent, and may not apply the best interests of the child standard absent a written finding that the parent was unfit or had engaged in conduct inconsistent with his protected status as a parent; and (3) the trial court must state that these findings

were based on clear, cogent, and convincing evidence. *Id.* at 573-74, 584 S.E.2d at 76.

In this case, the trial court found that visitation between defendant and the minor children was not in the children's best interest, but did not find that defendant was unfit or that his conduct was inconsistent with his protected parental status, and did not state that its decision to deny visitation was based on clear, cogent, and convincing evidence. Defendant argues that the trial court's ruling did not comply with the dictates of *Moore*. However, we conclude that the standard articulated in *Moore* directly conflicts with prior holdings of this Court and our Supreme Court and therefore does not control our decision in the instant case.

"According to well-established law, '[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.'" *State v. Perry*, __ N.C. App. __, __, 750 S.E.2d 521, 534 (quoting *In re Appeal of Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989)), *disc. review denied*, __ N.C. __, 749 S.E.2d 852 (2013). Thus, as a general rule, we are bound by prior opinions of this Court.

However, this Court has no authority to reverse existing Supreme Court precedent. *See Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732, 468 S.E.2d 447, 450 (1996) ("It is elementary that this Court is bound by holdings of the Supreme Court [of North Carolina]") (citation omitted), and *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985) (the Court of Appeals lacks authority to overrule decisions of the Supreme Court of North Carolina and has a "responsibility to follow those decisions, until otherwise ordered by the Supreme Court"). "Further, our Supreme Court has clarified that, where there is a conflicting line of cases, a panel of this Court should follow the older of those two lines." *State v. Gardner*, __ N.C. App. __, __, 736 S.E.2d 826, 832 (2013) (citing *In re R.T.W.*, 359 N.C. 539, 542 n.3, 614 S.E.2d 489, 491 n.3 (2005), *superseded by statute on other grounds as recognized in In re M.I.W.*, 365 N.C. 374, 376, 722 S.E.2d 469, 472, *rehearing denied*, 365 N.C. 568, 724 S.E.2d 512 (2012)).

As discussed above, numerous cases from both this Court and our Supreme Court have long held that issues of child custody and visitation are determined by the best interest of the child, based upon the preponderance of the evidence. In addition, this Court has consistently interpreted N.C. Gen. Stat. § 50-13.5(i) as written, without adding additional requirements to the

statute's text or deviating from the general rules governing child custody. The holding of *Moore* diverged sharply from this controlling precedent in significant respects.

First, *Moore* directed trial courts to apply to a custody dispute between a child's parents the standard applicable to a dispute between a parent and a non-parent. In *Petersen v. Rogers*, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994), our Supreme Court held that, in a custody dispute between a child's natural parent and a non-parent, "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail." However, in *Owenby*, 357 N.C. at 145, 579 S.E.2d at 266-67, which was decided before *Moore*, our Supreme Court explicitly ruled that *Petersen* was inapplicable to a custody dispute between parents:

> We acknowledged the importance of this liberty interest [of parents] nearly a decade ago when this Court held: "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally protected paramount right of parents to custody, care, and control of their children must prevail." . . . Therefore, unless a natural parent's conduct has been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent offends the Due Process Clause of

> the United States Constitution. Furthermore, <u>the protected right is irrelevant in a custody proceeding between two natural parents</u>, whether biological or adoptive, or between two parties who are not natural parents. In such instances, the trial court must determine custody using the "best interest of the child" test.

(emphasis added) (quoting *Petersen*, 337 N.C. at 403-04, 445 S.E.2d at 905, and citing *Price v. Howard,* 346 N.C. 68, 78-79, 484 S.E.2d 528, 534 (1997) (internal citation omitted), *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 520, 98 S. Ct. 549 (1978), and *Adams v. Tessener*, 354 N.C. 57, 61, 550 S.E.2d 499, 502 (2001)). *Moore's* holding that the *Petersen* presumption applies to a trial court's decision to deny visitation rights to a non-custodial parent contradicts our Supreme Court's holding that *Petersen* is "irrelevant" to a dispute between parents and that "[i]n such instances, the trial court must determine custody using the 'best interest of the child' test." *Id.*

*Moore* also failed to state a substantive or precedential basis for its holding that an order denying visitation was the functional equivalent of the termination of parental rights, and therefore required a trial court to apply the standards for termination proceedings. Our jurisprudence has long recognized significant differences between a child custody order, which is subject to modification upon a showing of changed circumstances, and orders for adoption or for termination of parental rights,

which are permanent. *See, e.g.*, *Stanback v. Stanback*, 287 N.C. 448, 456, 215 S.E.2d 30, 36 (1975) ("A judicial decree in a child custody and support matter is subject to alteration upon a change of circumstances affecting the welfare of the child and, therefore, is not final in nature.") (citations omitted), and *Owenby*, 357 N.C. at 145, 579 S.E.2d at 267 ("[A] termination of parental rights order completely and permanently severs all rights and obligations of the parent to the child and the child to the parent[.]") (citation omitted).

We also note that in *In re T.K.*, *D.K.*, *T.K.*, *& J.K.*, 171 N.C. App. 35, 613 S.E.2d 739, *aff'd* 360 N.C. 163, 622 S.E.2d 494 (2005), we affirmed a trial court's permanency planning order, holding that the trial court properly made findings as to the best interest of the children. Judge Tyson dissented in part, and argued that the trial court had failed to follow the standards set out in *Moore*, that denial of visitation rights "effectively terminated respondent's parental rights," *T.K.*, 171 N.C. App. at 42, 613 S.E.2d at 743, and that the "trial court erred by denying respondent all visitation rights . . . without finding her to be unfit or engaging in conduct inconsistent with her parental rights. Absent proper findings supported by clear, cogent, and convincing evidence, the trial court's conclusions of law are erroneous[.]" *Id.* at 44, 613 S.E.2d at 744-45 (citing

*Moore*). Our Supreme Court rejected this opportunity to ratify or adopt the holding of *Moore*, and affirmed the majority opinion.

Prior to the decision in *Moore*, binding precedent consistently held that (1) the standard in a custody dispute between a child's parents is the best interest of the child; (2) the applicable burden of proof is the preponderance of the evidence; (3) the principles that govern a custody dispute between a parent and a non-parent are irrelevant to a custody action between parents; and (4) a trial court complies with N.C. Gen. Stat. § 50-13.5(i) if it makes the finding set out in the statute. *Moore* does not acknowledge these cases or articulate a basis on which to distinguish it from earlier cases. We conclude that *Moore* does not control the outcome of this case, and that defendant is not entitled to relief based on *Moore*.

Defendant also argues that the trial court's finding that visitation between defendant and the minors would not be in the children's best interest is not supported by its other findings. We reject this argument and note the trial court's extensive findings, quoted above. We conclude that the trial court did not commit reversible error by denying defendant visitation and that the trial court's ruling in this regard should be affirmed.

### III. Child Support

In his next argument, defendant contends that the trial court erred by (1) calculating retroactive child support based upon the child support guidelines, rather than evidence of plaintiff's actual expenditures; (2) applying the 2011 guidelines to his retroactive child support obligation, rather than the 2006 guidelines; (3) imputing an amount of income to him that was not supported by proper findings; (4) awarding plaintiff a vehicle without determining its value; and (5) finding that defendant had willfully refused to pay any child support without excuse or explanation. We agree in part.

## A. Calculation of Retroactive Child Support

"'Child support awarded prior to the time a party files a complaint is properly classified as retroactive child support. . . . Child support awarded, however, from the time a party files a complaint for child support to the date of trial is . . . [termed] prospective child support[.]'" *Carson v. Carson*, 199 N.C. App. 101, 105, 680 S.E.2d 885, 888 (2009) (quoting *Taylor v. Taylor*, 118 N.C. App. 356, 361, 455 S.E.2d 442, 446 (1995), *rev'd on other grounds*, 343 N.C. 50, 468 S.E.2d 33 (1996) (internal citations omitted)).

N.C. Gen. Stat. § 50-13.4(c) states that the trial "court shall determine the amount of child support payments by applying the presumptive guidelines established pursuant to subsection

(c1) of this section." The guidelines in effect at the time of this hearing state that

> [i]n cases involving a parent's obligation to support his or her child for a period before a child support action was filed (*i.e.*, cases involving claims for "retroactive child support" or "prior maintenance"), a court may determine the amount of the parent's obligation (a) by determining the amount of support that would have been required had the guidelines been applied at the beginning of the time period for which support is being sought, or (b) based on the parent's fair share of actual expenditures for the child's care. . . .

Standing alone, this provision would allow a trial court to calculate retroactive child support by reference to the guidelines. However, in *Robinson v. Robinson*, 210 N.C. App. 319, 333, 707 S.E.2d 785, 795 (2011), we held that "'[r]etroactive child support payments are only recoverable for amounts actually expended on the child's behalf during the relevant period.' Therefore, a party seeking retroactive child support must present sufficient evidence of past expenditures made on behalf of the child, and evidence that such expenditures were reasonably necessary." (quoting *Rawls v. Rawls*, 94 N.C. App. 670, 675, 381 S.E.2d 179, 182 (1989), and citing *Savani v. Savani*, 102 N.C. App. 496, 501, 403 S.E.2d 900, 903 (1991)).

The rule stated in the Guidelines conflicts with the holding of *Robinson*. We have held that:

> Nowhere in the statute does the legislature authorize the Conference to override existing case law in formulating the Guidelines. Although the Guidelines are formulated by the Conference of Chief District Judges pursuant to authority granted them by the legislature in N.C. Gen. Stat. § 50-13.4(c1), the Conference is not a legislative body, and the Guidelines are not codified in the North Carolina General Statutes. . . . Therefore, we find that if the trial court follows the Guidelines in awarding retroactive child support in cases involving unincorporated separation agreements, instead of controlling case law, the court is in error.

*Carson*, 199 N.C. App. at 107, 680 S.E.2d at 889. *Carson* and *Robinson*, construed together, require that an award of retroactive child support be supported by evidence of plaintiff's actual expenditures for the children during the period for which she seeks retroactive child support.

Plaintiff acknowledges the cases cited above, but argues that "the Court of Appeals was mistaken in its decision in *Robinson*." However, we "are bound by opinions of prior panels of this Court deciding the same issue." *Easton v. J.D. Denson Mowing*, 173 N.C. App. 439, 441, 620 S.E.2d 201, 202 (2005) (citing *Civil Penalty*). We conclude that this issue is controlled by *Robinson* and *Carson*, and that the trial court's award of retroactive child support must be reversed and remanded for findings on plaintiff's actual expenditures for the children during the relevant time period.

## B. Application of 2011 Guidelines

Next, defendant argues that the trial court erred by calculating his retroactive child support obligation using the 2011, as opposed to the 2006, guidelines. However, as we have held that the trial court erred by using the guidelines to calculate retroactive child support, we do not reach this argument.

## C. Imputation of Income

Defendant argues next that the trial court erred in determining the amount of income it imputed to defendant. The trial court imputed to defendant an annual income of approximately $50,000. Defendant argues that this amount was not supported by the trial court's other findings or the evidence. We agree and remand for the trial court to make additional findings as to defendant's earning ability.

"Generally, a party's ability to pay child support is determined by that party's actual income at the time the award is made. A party's capacity to earn may, however, be the basis for an award where the party 'deliberately acted in disregard of his obligation to provide support.' Before earning capacity may be used as the basis of an award, there must be a showing that the actions reducing the party's income were taken in bad faith to avoid family responsibilities. . . . [T]his showing may be

met by a sufficient degree of indifference to the needs of a parent's children." *McKyer v. McKyer*, 179 N.C. App. 132, 146, 632 S.E.2d 828, 836 (2006) (citing *Atwell v. Atwell*, 74 N.C. App. 231, 235, 328 S.E.2d 47, 50 (1985), quoting *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997) (internal citation omitted), and citing *Bowers v. Bowers*, 141 N.C. App. 729, 732, 541 S.E.2d 508, 510 (2001)). In this case, defendant does not challenge the trial court's findings as to the effect of his intentional "course of sexually abusing" his daughter and the resultant loss of the licenses he needed to continue his previous career as a stockbroker and insurance agent, or the trial court's decision to impute income to him. What defendant does argue is that the trial court's ruling on the amount of income imputed to him was not supported by its findings. The court's findings on the issue of defendant's earning capacity include the following:

. . .

109. The Defendant earned a gross sum of One . . . ($100,000.00) in the year 2005 and if he had continued to [sell] insurance and be licensed as a . . . Stock Broker, he could have earned not less than . . . ($50,000.00) per year each year since that time.

. . .

115. The Defendant has no living expenses as his wife, a banker with BB&T, apparently provides for him. . . .

116. The Defendant testified that he could not secure employment in his former employment as an insurance salesman or stock broker because of his felony convictions.

117. The Defendant reported Zero income tax in 2009 despite apparently working as a farrier and earning a gross income of . . . ($8,000.00). He also used business expenses deductions in 2009 for a portion of his home which he admitted that he did not own or pay for.

118. In 2010, he indicated that he had lost . . . ($10,086,00) in income from his employment as a farrier, but this included . . . ($15,628.00) in car and truck expenses and . . . ($7,480.00) in supplies.

119. The Defendant's tax returns for 2009 and 2010 were not creditable evidence of his earning capacity.

. . .

124. In the present case, before his arrest and conviction, the Defendant father was employed as an insurance salesman and stock broker, and capable of earning a gross salary of at least . . . ($100,000.00) per year, a net salary of . . . ($50,000.00), or a monthly salary of . . . ($4,167.00) per month at a minimum.

. . .

132. . . . Defendant's income from all sources is imputed to be . . . ($4,167.00) per month.

The court found that defendant had previously earned $100,000 and imputed a current income of approximately $50,000, or half of his previous salary. However, the findings do not

establish any basis for the court's imputation in 2011 of half of what he earned in 2005, as opposed to some other fraction or amount. "[T]he findings of fact on this issue are insufficient to support the trial court's determination of *the amount of income* that should be imputed to [defendant]. A trial court must 'make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.'" *McKyer*, 179 N.C. App. at 147-48, 632 S.E.2d at 837 (quoting *Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005)) (emphasis in original). We conclude that the court's determination that it was appropriate to impute income to defendant should be upheld, but that the order must be remanded for findings detailing how the trial court arrives at the amount of income to be imputed to defendant.

## D. Transfer of Vehicle to Plaintiff

Defendant argues next that the trial court erred by awarding plaintiff a 1997 Ford Expedition as an "additional form of child support" without determining the vehicle's value and deducting it from the child support award. We disagree.

Defendant cites N.C. Gen. Stat. § 50-13.4(e):

> (e) Payment for the support of a minor child shall be paid by lump sum payment, periodic payments, or by transfer of title or possession of personal property of any

interest therein, or a security interest in or possession of real property, as the court may order. The court may order the transfer of title to real property solely owned by the obligor in payment of arrearages of child support so long as the net value of the interest in the property being transferred does not exceed the amount of the arrearage being satisfied. . . .

Defendant notes that if the trial court orders the transfer of real property in payment of child support arrearages it must determine the property's value. He argues that an "analogous situation exists here," that the trial court "should have determined the Vehicle's value and deducted that amount from the total child support award" and that the court's "failure to do so constitutes error." However, N.C. Gen. Stat. § 50-13.4(e) does not require the trial court to determine the value of personal property applied towards child support arrearage and defendant does not offer any support for his contention that such a transfer is "analogous" to a transfer of real property or any authority for us to supplement the statute with an additional requirement not found therein.

And, defendant does not dispute the trial court's finding of fact that:

144. The only vehicle the Plaintiff [had] available to her is a 1997 Ford Expedition until May 2010 which has 285,000 miles on it as of the date of this hearing which she has had since the parties' separation although this vehicle has been titled to the

> Defendant. She is seeking this vehicle as an additional form of child support from the Defendant. The Defendant has agreed for said in kind child support to be also paid since the Plaintiff has maintained all expenses of this vehicle. The Defendant will sign over title of said vehicle to the Plaintiff on or before June 15, 2012. . . .

Thus, defendant concedes that (1) the vehicle was fifteen years old and had 285,000 miles on it at the time of the hearing; (2) although it had been titled in his name, plaintiff had assumed responsibility for "all expenses" of the vehicle; and (3) he consented to transfer of the vehicle as an additional form of child support.

"[T]o obtain relief on appeal, an appellant must not only show error, but that appellant must also show that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." *Starco, Inc. v. AMG Bonding & Ins. Servs.*, 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996) (citation omitted). Defendant does not assert any prejudice from the court's alleged error. In addition, defendant does not dispute that he consented to transfer the vehicle to plaintiff, a finding supported by his testimony. Given the defendant's failure to articulate a legal basis for interpreting N.C. Gen. Stat. § 50-13.4(e) in a manner not supported by the statute's text, any prejudice arising from the court's alleged error, or any reason to grant relief on the

basis of a transfer to which he consented, we decline to hold that the court erred by transferring the 1997 vehicle to plaintiff without making a specific finding as to its value.

### E. Failure to Pay Any Child Support After August 2006

In defendant's next argument, he argues that the trial court erred by finding "that, although [he] has resources to pay some child support, he [had] 'willfully failed to pay any child support without excuse.'" Defendant does not dispute that he failed to pay <u>any</u> child support after August 2006, but argues that he presented evidence of his inability to find employment. However, the court was not required to believe defendant's testimony. We hold that this finding was supported by evidence in the record.

### III. Attorney's Fees

In his final argument, defendant contends that the trial court erred by awarding attorney's fees to plaintiff. Defendant argues that the trial court erred in finding that defendant had the ability to pay attorney's fees, basing its award of attorney's fees in part on its finding that defendant had acted in bad faith, and finding that plaintiff had insufficient means to pay attorney's fees. We agree in part.

### 1. Standard of Review

N.C. Gen. Stat. § 50-13.6 (2013) states that in any proceeding for child custody or support:

> [T]he court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding[.] . . .

"To award attorney's fees in an action for custody and support,

> [t]he trial court must make specific findings of fact relevant to: (1) The movant's ability to defray the cost of the suit, specifically that the movant is unable to employ counsel so that he may proceed to meet the other litigant in the suit; (2) whether the movant has initiated the action in good faith; (3) the attorney's skill; (4) the attorney's hourly rate charged; and (5) the nature and extent of the legal services performed.

*Hennessey v. Duckworth*,__ N.C. App. __, __, 752 S.E.2d 194, __ (2013) (quoting *Cameron v. Cameron*, 94 N.C. App. 168, 172, 380 S.E.2d 121, 124 (1989) (citations omitted). Pursuant to N.C. Gen. Stat. § 50-13.6, in a custody action, a trial court "has the discretion to award attorney's fees to an interested party when that party is (1) acting in good faith and (2) has insufficient means to defray the expense of the suit. The facts

required by the statute must be alleged and proved[.] . . . Whether these statutory requirements have been met is a question of law, reviewable on appeal." *Hudson v. Hudson*, 299 N.C. 465, 472, 263 S.E.2d 719, 723 (1980).

## 2. Analysis

The trial court made the following findings:

> 1. This action for child custody was brought by the Plaintiff in good faith and she is without sufficient funds to defray the expenses of this custody lawsuit including all of her attorneys' fees.
>
> 2. As this is a proceeding for child support of the parties' three minor children, the Plaintiff may be entitled to the entry of an Order requiring the [defendant] to pay some or all of her reasonable attorneys' fees pursuant to N.C.G.S. Section 50-13.6.
>
> 3. The Defendant, who is the party who is going to be ordered to furnish support, has refused to provide support of any type, and has refused to provide support which is adequate under the circumstances existing at the time of the institution of this action or proceeding.

Defendant does not dispute that these findings meet the statutory requirements discussed above. He does not challenge the trial court's determination of a reasonable amount of attorney's fees, which we affirm. However, defendant raises other arguments about the court's award of attorney's fees to plaintiff.

Defendant argues first that the trial court erred by finding that he "has resources" available to pay attorney's fees. Defendant directs our attention to evidence he presented tending to show that he faces economic challenges. However, the trial court was not required to find his evidence credible. He also argues that the trial court should not have considered the fact that his living expenses are being paid by his wife, because she has no legal obligation to support his children. However, "where a party's new spouse shares responsibility for the party's expenses and needs, it is proper for the court to consider income received by the new spouse[.]" *Harris v. Harris*, 188 N.C. App. 477, 487, 656 S.E.2d 316, 321-22 (2008) (citing *Wyatt v. Wyatt*, 35 N.C. App. 650, 651-52, 242 S.E.2d 180, 181 (1978).

The underlying premise of this argument is that before it could award attorney's fees to plaintiff, the trial court had to make findings about his ability to pay these fees. Defendant cites no authority for this proposition and our Supreme Court has held that "'we do not believe that the determination of whether a party has sufficient means to defray the necessary expenses of the action requires a comparison of the relative estates of the parties'" and "that N.C.G.S. § 50-13.6 does not require the trial court to compare the relative estates of the

parties[.]" *Van Every v. McGuire*, 348 N.C. 58, 59-60, 497 S.E.2d 689, 690 (1998) (quoting *Taylor*, 343 N.C. at 57, 468 S.E.2d at 37. We conclude that the trial court was not required to find that defendant "had resources" available in order to award attorney's fees to plaintiff, making it unnecessary for us to analyze the evidentiary support for this finding of fact.

Defendant also argues that the trial court erred by basing its award of attorney's fees on his "bad faith in requesting custody or visitation." This argument lacks merit. In Finding No. 145, the trial court stated that:

> 145. Moreover, the Court, as a mixed finding of fact and conclusion of law, determines that the Defendant's insistence upon a trial seeking custody or visitation of his children and defending against the claims of his former wife, the Plaintiff, for the same and for her claims of child support are in bad faith, not well taken, and he has adequate resources available to him to reimburse her for some or all of her attorney's fees.

Defendant concedes that "this Finding/Conclusion was not included in the findings related to the attorney's fees award[.]" There is no evidence that the trial court's award of attorney's fees to plaintiff was "based on" its passing reference to bad faith in this finding. Defendant is not entitled to relief based upon this argument.

Defendant also challenges the evidentiary support for the trial court's finding that plaintiff "is without sufficient funds to defray the expenses of this custody lawsuit including all of her attorneys' fees[.]" The trial court made the following findings regarding plaintiff's income, expenses, and estate:

. . .

102. The Plaintiff has been a nurse registered by the State of North Carolina from 1987 through 2007, and has been a Registered Nurse in Kansas from 1999 until [the] present.

103. The Plaintiff is presently employed with the Smith Center School District as the School Nurse. She also runs the concession stand to earn extra money. The Plaintiff's gross monthly earnings from all sources is . . . ($3,033.42). The Plaintiff has earned approximately . . . ($3,033.00) per month from all sources since August 2006.

104. The Plaintiff paid a total of . . . ($7,740.70) in premiums for the three minor children's, Amanda, Allysa, and Noah, health insurance coverage[.] . . .

105. The children were approved for Health Wave coverage on October 26, 2009, so the Plaintiff could secure health insurance on her three minor children at no additional cost.

106. The Plaintiff has sought to recover a portion of the out of pocket expenses paid by her . . . as a portion of the retroactive and prospective child support in the percentage of the Plaintiff's income to the

> Defendant's income as hereinafter determined and imputed by the Court.
>
> . . .
>
> 132. The Plaintiff's income from all sources is . . . ($3,033.00) per month[.]

The court's findings are sufficient with regards to plaintiff's income. However, the trial court made no findings as to her expenses or her assets and estate. We remand for additional findings to support the trial court's finding that plaintiff had insufficient means to defray the cost of counsel.

## Conclusion

We affirm the trial court's ruling denying defendant visitation with the minor children, its determination that plaintiff was entitled to child support, its ruling that it was proper to impute income to defendant, and its transfer of the 1997 vehicle to plaintiff. We reverse and remand the order with regard to the amount of retroactive child support to which plaintiff may be entitled, the amount of income that may be imputed to defendant, and for additional findings regarding plaintiff's expenses as it pertains to her claim for attorney's fees. In its discretion, the trial court may take such additional evidence as it deems necessary.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

Judges STEPHENS and DAVIS concur.