IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-457

No. COA21-395

Filed 5 July 2022

Pitt County, No. 19 CRS 55797

STATE OF NORTH CAROLINA

v.

XAVIER MARKEESE LANGLEY, Defendant.

Appeal by Defendant from judgment entered 25 February 2021 by Judge Marvin K. Blount III in Pitt County Superior Court. Heard in the Court of Appeals 12 January 2022.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Ellen A. Newby, for the State.*
>
> *Mark Montgomery, for Defendant-Appellant.*

WOOD, Judge.

¶ 1 Xavier Markeese Langley ("Defendant") appeals from a judgment convicting him of taking indecent liberties with a child. On appeal, Defendant argues the trial court erred by 1) not requiring unanimity amongst the members of the jury as to what acts are considered indecent liberties with a child, and 2) by not *ex mero motu* instructing the jury a reasonable mistake in age is a defense. After a careful review of the record and applicable law, we hold the trial court committed no error.

## I. Factual and Procedural Background

¶ 2 In January 2018, Defendant met Lisa[1] on Tagged, an online dating application. Defendant and Lisa began talking through this dating application and then began messaging each other through Facebook Messenger. At the time, Lisa was fifteen and Defendant was twenty-seven. Notwithstanding this, Lisa initially told Defendant she was eighteen. Lisa and Defendant began to discuss when they could meet each other, and then Lisa told Defendant she was sixteen. Lisa gave her address to Defendant so they could meet each other.

¶ 3 On January 31, 2018, Defendant drove to Lisa's house to pick her up at approximately 6:00 p.m. Lisa left her house and got into Defendant's truck. Defendant drove with Lisa to a third party's house. While Lisa was in the vehicle, an individual entered the back seat of Defendant's truck; Defendant retrieved marijuana from the glove compartment, handed it to the individual, and the individual exited the truck. Thereafter, Defendant drove to a gas station, purchased juice for Lisa and gas, and then took Lisa to the townhouse of a woman with whom he had a previous relationship. After they arrived at the townhouse, Defendant began showing Lisa pictures of women on his phone. According to Lisa, these were "[p]ictures of girls that were, like, dressed up and their hair was done, and they had makeup on. He was saying that his ex did that, did their hair and makeup and dressed them up, and she

---

[1] A pseudonym is used to protect the identity of the minor child. *See* N.C.R. App. P. 42(b).

was going to do the same with me." After showing Lisa these pictures, Defendant exited the truck and went into the woman's townhouse while Lisa waited in his truck.

¶ 4    When Defendant returned, he drove Lisa to the side of an apartment where the dumpsters were kept and began asking her sexual questions, including if she had "ever give[n] oral sex." Lisa answered "no[,]" and Defendant unbuttoned his pants and pushed Lisa's head toward his penis where she then performed oral sex on him. Afterwards, Defendant drove to Walmart, parked in the parking lot, and entered the store to purchase makeup "for whatever his ex was going to do." Defendant and Lisa then returned to the truck. Inside the truck, Defendant pulled out a "blunt" of marijuana and asked Lisa if she had ever smoked marijuana. Lisa denied ever doing so. Defendant asked Lisa to smoke the "blunt" and she acquiesced. Afterwards, she began getting paranoid and "kept seeing my grandmother's car everywhere, and it wasn't."

¶ 5    Meanwhile, Lisa's sister noticed Lisa was gone and notified their Mother. Lisa's sister checked Facebook Messenger and discovered she had been communicating with Defendant. However, the name on the Facebook profile page from which Defendant messaged Lisa was "Sage Minister Prezi."

¶ 6    Lisa's sister showed the messages to their Mother. Mother immediately sent

a message to Defendant asking that he bring Lisa back home; called Lisa's Father[2] and sent screenshots of the messages between Defendant and Lisa to him; called other family members; and contacted the police. When Father received the screenshots of these messages, he began to investigate the Facebook profile Defendant used to message Lisa. Father discovered the "Sage Minister Prezi" account was associated with a Facebook account under Defendant's real name because the pictures in each account were identical. Thus, Father "knew they belonged to the same person[]" and began contacting the two profile accounts, requesting Defendant return Lisa to her home. Father told Defendant he "knew he had my daughter" and "she was underage, age of 15." Father then took Defendant's profile picture from Defendant's Facebook account and made a post to his own, personal Facebook account "calling him a pedophile and saying that he had my 15-year-old daughter . . . ."

¶ 7        Sometime after Father's Facebook post, Defendant's mother was alerted about the content of the post. While Defendant was still in the Walmart parking lot with Lisa, his mother called him and told him about Father's Facebook post and that Lisa was only fifteen. According to Lisa, when Defendant heard this news, he became "frustrated[] [and] mad[]" and "told me to call my mom." Defendant asked Lisa how

---

[2] According to Mother, Father is not Lisa's biological father, but has "been in her life since she was six weeks old. . . . He's been the father figure that she's known."

old she was, and Lisa admitted she was fifteen. Lisa then used Defendant's cell phone to call her sister. Mother retrieved the phone and asked Lisa to come home, but Lisa kept saying she was "okay[,]" and was "just going to stay where I am." According to Mother and Lisa, Lisa was merely repeating to her Mother what Defendant instructed her to say.

¶ 8        Lisa then finished the conversation with her Mother and hung up the phone. Lisa explained she was feeling more tired, and Defendant put his hand into her underwear and digitally penetrated her. Defendant told Lisa to take her shirt off, leaned both of their chairs back, and began touching her breasts with his mouth. Lisa was unable to recall what happened next; rather, the next event Lisa remembered was waking up on February 1, 2018 and seeing it was daylight outside. Immediately, Lisa noticed her clothes were loose, her vagina and stomach were hurting, and she had a white discharge in her underwear. Defendant was still in the driver's seat. After Lisa awoke, Defendant took Lisa to a Microtel so she could get a rubber band to put her hair up, and then dropped her off at the Department of Social Services ("DSS"). Once Lisa was at DSS, Defendant immediately left.

¶ 9        DSS sent Lisa to a hospital where Maya Nobles, a sexual assault nurse, performed a sexual assault rape kit on her. While performing an exam of Lisa's vagina and cervix, Nobles noticed "red spots . . . in the canal, as well as white discharge." A subsequent examination of the vaginal swab collected from the sexual

assault rape kit performed on Lisa showed the major contributor of DNA was Lisa, and the minor contributor of DNA was Defendant. The examination also revealed the presence of sperm on the vaginal swab sample.

¶ 10    Defendant was arrested on August 14, 2019 and on October 28, 2019 was indicted on charges of delivering a controlled substance to a person under sixteen but older than thirteen; first degree kidnapping; statutory rape of a child fifteen years of age or younger; attempted statutory sex offense with a child aged fifteen years or younger; and taking indecent liberties with a child. A trial was held between February 22 to 25, 2021. On February 24, 2021, the trial court granted Defendant's motion to dismiss the offense of delivering a controlled substance to a person under sixteen but older than thirteen. On February 25, 2021, the jury found Defendant not guilty of first- or second-degree kidnapping, statutory or attempted statutory rape, and attempted statutory sex offense with a child aged fifteen. However, the jury found Defendant guilty of taking indecent liberties with a child pursuant to N.C. Gen. Stat. § 14-202.1. Defendant was sentenced to 16 to 29 months in prison, with credit given for 562 days served prior to trial. Defendant timely filed a notice of appeal.

## II.    Standard of Review

¶ 11    Defendant's arguments on appeal are premised upon the jury instructions given at trial. We note Defendant failed to object to these jury instructions, and thus failed to preserve these issues. *See State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d

326, 334 (2012). Our Supreme Court's "precedent demonstrates that unpreserved issues related to jury instructions are reviewed under a plain error standard[] . . . ." *State v. Collington*, 375 N.C. 401, 410, 847 S.E.2d 691, 698 (2020); *see State v. Juarez*, 369 N.C. 351, 357-58, 794 S.E.2d 293, 299 (2016). The plain error standard

> is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. at 516-17, 723 S.E.2d at 333 (cleaned up) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

¶ 12    It is well established that,

> [t]he adoption of the plain error rule does not mean that every failure to give a proper instruction mandates reversal regardless of the defendant's failure to object at trial. To hold so would negate Rule 10(b)(2) which is not the intent or purpose of the plain error rule. *See United States v. Ostendorff*, 371 F. 2d 729 (4th Cir.), *cert. denied*, 386 U.S. 982, 18 L.Ed. 2d 229, 87 S.Ct. 1286 (1967). . . . Indeed, even when the plain error rule is applied, "it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S.

145, 154, 52 L.Ed. 2d 203, 212, 97 S.Ct. 1730, 1736 (1977).

*Odom*, 307 N.C. at 660-61, 300 S.E.2d at 378 (cleaned up); *see Lawrence*, 365 N.C. at 517, 723 S.E.2d at 333. Review under the standard of plain error "should be used sparingly, only in exceptional circumstances[] . . . ." *Lawrence*, 365 N.C. at 517, 723 S.E.2d at 333. Therefore, when "deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79 (citation omitted).

## III. Discussion

¶ 13    Defendant raises multiple issues on appeal; each will be addressed in turn.

### A. Jury Unanimity

¶ 14    Defendant first argues the trial court erred by not requiring the jury to be unanimous as to what act constituted indecent liberties with a child. We disagree.

¶ 15    A defendant is guaranteed an unanimous jury verdict under both the North Carolina Constitution and North Carolina General Statutes. N.C. Const. art. 1, § 24; N.C. Gen. Stat. § 15A-1237(b) (2021). However, with respect to the offense of taking indecent liberties with a minor, "the risk of a nonunanimous verdict does not arise in cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense, discrete criminal activities in the disjunctive." *State v. Lawrence*, 360 N.C. 368, 375, 627 S.E.2d 609, 613 (2006) (internal brackets

omitted) (quoting *State v. Hartness*, 326 N.C. 561, 564, 391 S.E.2d 177, 179 (1990)).

Rather, "Defendant's purpose for committing such act is the gravamen of this offense;

the particular act performed is immaterial." *Hartness*, 326 N.C. at 567, 391 S.E.2d

at 180.

¶ 16        Our Supreme Court addressed this very issue in *State v. Hartness*. In

*Hartness*, defendant was indicted for, *inter alia*, three counts of taking indecent

liberties with a minor. *Id.* at 562 391 S.E.2d at 178. On appeal, defendant argued

the disjunctive phrasing as to what acts constituted indecent liberties with a child

rendered the verdict nonunanimous as "the jury could have split in its decision

regarding which act constituted the offense[] . . . ." *Id.* at 563, 391 S.E.2d at 178.

Justice Louis Meyer, writing for the majority, conducted a thorough analysis of N.C.

Gen. Stat. § 14-202.1. and concluded,

> N.C.G.S. § 14-202.1 proscribes simply "any immoral,
> improper, or indecent liberties." Even if we assume that
> some jurors found that one type of sexual conduct occurred
> and others found that another transpired, the fact remains
> that the jury as a whole would unanimously find that there
> occurred sexual conduct within the ambit of "any immoral,
> improper, or indecent liberties." Such a finding would be
> sufficient to establish the first element of the crime
> charged.

*Id.* at 565, 391 S.E.2d at 179. In other words, "the crime of indecent liberties is a

single offense which may be proved by evidence of the commission of any one of a

number of acts." *Id.* at 567, 391 S.E.2d at 180.

¶ 17        Applying *Hartness* to the present case, Defendant's argument that the trial court erred by not requiring unanimity as to what acts constitute indecent liberties with a child fails. Testimonies and evidence presented at trial tended to show Defendant had Lisa perform oral sex on him, digitally penetrated her and touched Lisa's breasts, and his sperm was found on Lisa's vaginal swab. Even if each member of the jury considered a different act in reaching the conclusion Defendant committed the offense of taking indecent liberties with a child, this is immaterial to the unanimous finding he committed such offense. *See id.* at 565, 391 S.E.2d at 179. Thus, the trial court did not err by not requiring an unanimous jury as to what acts constituted indecent liberty with a minor, because the offense does not require such a finding.

¶ 18        Defendant requests this Court to reconsider *Hartness* by arguing  1) the facts in *Hartness* differ from those in this case, 2) *Hartness*'s interpretation of N.C. Gen. Stat. § 14-202.1 as applied to Defendant is vague, and 3) *Hartness* conflicts with U.S. Constitutional law. We are unpersuaded by his arguments. Subsequent cases from our appellate courts have affirmed our Supreme Court's holding in *Hartness*. *See State v. Smith*, 362 N.C. 583, 598, 669 S.E.2d 299, 309 (2008) ("Because the jury could have found that defendant's acts during the first or second visit constituted an indecent liberty with a child, it is immaterial that the trial court did not give specific instructions as to which of those acts were at issue."); *Lawrence*, 360 N.C. at 374, 627

S.E.2d at 612 ("Therefore, the jury may have considered a greater number of incidents than the three counts of indecent liberties charged in the indictments. However, this fourth incident had no effect on jury unanimity because according to *Lyons*, *Hartness* holds that while one juror might have found some incidents of misconduct and another juror might have found different incidents of misconduct, the jury as a whole found that improper sexual conduct occurred."); *State v. McCarty*, 326 N.C. 782, 784, 392 S.E.2d 359, 360 (1990); *State v. Wallace*, 179 N.C. App. 710, 719-720, 635 S.E.2d 455, 462 (2006).

¶ 19        Based upon our Supreme Court's ruling in *Hartness* and our court's subsequent affirmation of this case, we decline to re-examine *Hartness* herein. Accordingly, we hold the trial court did not err by not requiring the jury to specify which acts by Defendant constituted indecent liberties with Lisa when determining Defendant was guilty of taking indecent liberties with a minor.

## B. *Ex Mero Motu* Jury Instruction

¶ 20        We now turn to Defendant's final contention that the trial court erred or plainly erred by failing to instruct the jury *ex mero motu* that mistake in age is a defense. We disagree.

¶ 21        As a general rule, "[i]f a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance." *State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993).

However, our courts have firmly established that mistake of age is not a valid defense to the charge of taking indecent liberties with a child. *State v. Breathette*, 202 N.C. App. 697, 704, 690 S.E.2d 1, 6 (2010); *Cinema I Video, Inc. v. Thornburg*, 83 N.C. App. 544, 569, 351 S.E.2d 305, 320 (1986), *aff'd,* 320 N.C. 485, 358 S.E.2d 383 (1987); s*ee also State v. Anthony*, 133 N.C. App. 573, 579, 516 S.E.2d 195, 199 (1999) ("[M]istake of age is not a defense. In undertaking to have sex with the victim, defendant assumed the risk that she was under legal age."), *aff'd,* 351 N.C. 611, 528 S.E.2d 321 (2000).

Defendant concedes our Court's precedent, but nonetheless argues mistake of age should be a defense to taking indecent liberties with a child. We disagree. "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *Respess v. Respess*, 232 N.C. App. 611, 625, 754 S.E.2d 691, 701 (2014) (cleaned up) (quoting *State v. Perry*, 229 N.C. App. 304, 322, 750 S.E.2d 521, 534 (2013)). As such, "we lack the authority to provide Defendant with the further review that he seeks." *Perry*, 229 N.C. App. at 322, 750 S.E.2d at 534. Therefore, since mistake of age is not a viable defense against taking indecent liberties with a child, we hold the trial court did not err by failing to instruct the jury as such.

## IV. Conclusion

The trial court did not err by not requiring the jury to specify what acts constituted taking indecent liberties with a child and by not instructing the jury *ex mero motu* that mistake in age is a defense. Accordingly, we hold Defendant received a fair trial free from error.

NO ERROR.

Judges DILLON and JACKSON concur.